IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT BUCHANAN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 10-cv-1663 |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY RAMOS, et al., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Robert Buchanan, Jr. brings this action pursuant to 42 U.S.C. § 1983. He alleges that Defendants Christopher Harrington and Dale Schwarz violated his constitutional rights by using excessive force against him during a strip search on September 21, 2009. He also alleges that Defendant Jacob Duncan violated his constitutional rights by exhibiting deliberate indifference to his health and safety by denying him water for several days in the wake of the September 21, 2009 incident. Defendants have moved for summary judgment on both claims [81]. For the reasons set forth below, the Court grants Defendants' motion as to the deliberate indifference claim and denies it as to the excessive force claim. This matter is set for status on April 16, 2013 at 9:00 a.m.

**I.     Facts**

   **A.     September 21, 2009 Incident**

Plaintiff Robert Buchanan, Jr. is an inmate in the custody of the Illinois Department of Corrections. He is currently incarcerated at Stateville Correctional Center and was incarcerated there at the time of the alleged incidents that precipitated this case. Defendants Christopher

1

Harrington (sued as "Christop Harrington"), Dale Schwarz, and Jacob Duncan were all correctional officers at Stateville at the time of the alleged incidents.

In September 2009, Buchanan was under watch by the Stateville Investigations/Intelligence unit for suspected receipt of tobacco and drugs during visits. On September 21, 2009, Buchanan participated in a visit with his nephews and a friend. Defendant Schwarz attempted to monitor Buchanan's visit but was unable to observe Buchanan's conduct. Buchanan alleges that two correctional officers not named as Defendants strip searched him immediately following the visit. After that shakedown, Buchanan contends, he was led to the "bullpen at gate 5" to await his return to the prison. Defendants dispute that Buchanan was strip searched before his placement in Gate 5. There is no dispute that Defendants Harrington and Schwarz ultimately retrieved Buchanan from Gate 5 after the visit.

Harrington and Schwarz then escorted Buchanan to the Investigations Unit office for a strip search. Harrington and Schwarz placed Buchanan against the wall of the office and ordered him to empty the contents of his pockets on to a chair. At this point, the parties' stories diverge. Buchanan contends that he removed two inhalers and a comb from his pockets, then reached up an empty hand to brush his facial hair away from his mouth. Defendants contend that while Buchanan was emptying his pockets, he quickly turned toward the wall, reached into his pocket, removed a small balloon-like item, and then moved his hand toward his mouth.

According to Buchanan, when he reached up to touch his facial hair, Harrington grabbed him by the neck, applied a "rear naked choke hold," and screamed at him to spit out any items in his mouth. According to Defendants, both Schwarz and Harrington ordered Plaintiff to remove the item from his mouth. When Buchanan did not comply, Harrington attempted to grab Buchanan's hand and observed that he was trying to swallow something. Defendants contend

that Buchanan became combative and pushed Harrington, at which point Harrington placed Buchanan in a headlock in an effort to subdue him and prevent him from swallowing the object. The parties agree that Schwarz grabbed Buchanan's arm and forced him to the ground.

Lieutenant Michael Buczkowski heard and responded to the scuffle. Defendants contend that Buczkowski tried to retrieve the item from Buchanan's mouth, and that Buchanan attempted to bite Buczkowski. Buchanan denies that he had anything in his mouth. He also denies that he attempted to bite Buczkowski, though he testified in his deposition that he heard someone say "He tried to bite me." The parties agree that Buczkowski sprayed Buchanan in the face with pepper spray. Defendants contend that at that point, Buchanan resisted their efforts to handcuff him for approximately one minute. Eventually, they contend, Buchanan was restrained, though he continued to make verbal threats against them. Buchanan contends that after he was pepper sprayed, he lost consciousness. When he regained consciousness, he contends, he was lying on the ground in handcuffs. Buchanan denies threatening the officers.

Buchanan testified at his deposition that Harrington and Schwarz "yanked him up" from the floor, "dragged" him down some stairs, and sat him on a bench for 30-40 minutes before escorting him to the healthcare unit. Defendants agree that Buchanan was escorted to the healthcare unit,[1] where he received treatment to remove the pepper spray from his eyes.

---

[1] Defendants point to Buchanan's post-incident investigational interview, in which Buchanan stated only that "Harrington was saying that he should have my family arrested and that he should throw my fucking ass down the stairs," and suggest that because Buchanan did not testify to being dragged down the stairs at that point, his "self-serving" deposition testimony about the alleged "dragging" and "yanking" should be disregarded. The Court disagrees. It is true that "[a]ffidavits signed under oath 'when offered to contradict the affiant's deposition are so lacking in credibility as to be entitled to zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the discrepancy.'" *Broaddus v. Shields*, 665 F.3d 846, 856 (7th Cir. 2011) (quoting *Beckel v. Wal-Mart Assocs.*, 301 F.3d 621, 623 (7th Cir. 2002)). But Buchanan has not offered the investigative interview – which does not appear to have been given under oath – to contradict his deposition. Indeed, there is not necessarily a contradiction between the allegations in his interview and those in his deposition. The allegedly differing accounts ultimately may bear on Buchanan's credibility, but that is not an issue for this Court at this time. See, *e.g.*,

## B. Dry Cell

After the pepper spray was rinsed from his eyes, Buchanan was placed into a "dry cell." A dry cell is a cell within the healthcare unit that is used to temporarily house inmates suspected of ingesting contraband and who are under medical watch to determine whether they will physically pass the ingested contraband. Dry cells are so named because the water flow to their sinks and toilets is turned off and non-functional.

Buchanan was in the dry cell from September 21-24, 2009. Defendant Duncan provided security for the dry cells during the 3:00 p.m. to 11:00 p.m. shift on September 21-23, 2009. Buchanan contends that he was denied food and water during his first few days in the dry cell. He testified that he asked Defendant Duncan for water on at least two occasions, but that Duncan refused his request. Buchanan testified that he was forced to drink out of the toilet. Duncan testified that he does not recall having any conversations with Buchanan regarding requests for food or beverages. It is undisputed that Duncan lacked the authority to open or unlock Buchanan's cell door or "chuck hole" on his own. Defendants contend that all inmates receive meal service, including beverage, three times per day pursuant to Illinois Department of Corrections policies.

During his time in the dry cell, Buchanan had to alert officers each time he had a bowel movement so that his excrement could be searched for contraband. The searches did not recover any contraband. Buchanan ultimately was x-rayed and no contraband was found. He was released from the dry cell on September 24, 2009.

## C. Disciplinary Report

Buchanan received a disciplinary report or ticket relating to the September 21, 2009

---

*Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("[O]n summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts.").

incident. He was charged with Assaulting Any Person – Staff, for biting Lieutenant Buczkowski; Intimidation or Threats, for his "scuffle with the C/Os"; Insolence, for refusing a direct order; and Disobeying a Direct Order, for refusing to comply. The "Assaulting Any Person – Staff" charge later was downgraded to Attempted Assault of Any Person – Staff. At a disciplinary hearing on September 30, 2009, Buchanan professed his innocence and stated that Defendants Harrington and Schwarz choked him and that he never tried to assault anyone. He also stated that non-Defendant correctional officers Banks and Gibson did a shakedown on him. Buchanan was found guilty of the charges. The "basis for decision" was:

> Officer/Intel C. Harrington stated he went to gate five and placed hand cuffs on inmate Buchanan. They took Buchanan to the investigation office to strip search him and that's when Harrington observed inmate Buchanan with his right hand reach up toward his face and put a small balloon like object into his mouth. Harrington said he gave him a direct order and Officer Schwarz gave him a direct order to take the item out of his mouth. Harrington said inmate Buchanan became combative by trying to push away from them (Harrington and Schwarz). Harrington said with the help of Schwarz, they had to take inmate Buchanan to the ground in an attempt to regain the item and to restrain him. During the scuffle, Internal Affairs Intelligence Coordinator Lieutenant M. Buczkowski stepped in to assist in restraining inmate Buchanan. During the scuffle inmate Buchanan attempted to bite Buczkowski on the hand and that's when O.C. gas had to be utilized on Buchanan. Harrington stated in the report that there were no injuries to staff or inmates. This Committee is satisfied that Buchanan is guilty of the indicated charges. Buchanan was identified by his IDOC card.

[82-11]. As discipline, Buchanan received six months C grade/level, six months segregation, revocation of six months good conduct credit and meritorious good time credit, six months commissary restriction, and six months contact visits restriction. [82] ¶ 25. The disciplinary ticket has never been overturned or expunged, *id.*, though the good conduct credit restriction was reduced. See [82-9] at 4; [82-10] at 1.

D.  **Grievances**

On September 25, 2009, Buchanan filed a grievance relating to the September 21, 2009

incident. [82-9]. In the "Nature of the Grievance" section of the form, Buchanan checked the "Staff Conduct" and "Disciplinary Report" boxes. See *id.* He did not check the "Dietary" or "Medical Treatment" boxes. See *id.* The grievance related Buchanan's version of the incident. See *id.* It also contained the following allegations about his time in the dry cell and the disciplinary ticket:

> Then I was taken to the H-C-U where the mace was rinsed from my face, then I was placed in a dry cell #127 and stripped of all my clothing and I was told that when I have a bowel movement to call a c/o so that they could look through my bowel movements. This happened for (4) days and nothing was found then on the fourth day I was taken to N-R-C where I was x-rayed from head to toe and still nothing was found, then I was placed in segregation and given a ticket for assaulting any person, intimidation or threats, insolence, and disobeying a direct order when I was the one assaulted, intimidated and cursed out for an assumption and false accusation!

*Id.* at 2. The grievance officer reviewed the grievance and recommended that it be denied. See *id.* at 3. The officer found that the disciplinary report "was reviewed and determined by the Adjustment Committee that they are reasonably satisfied of the offender's guilt. All efforts were zealously made to recover suspected contraband. Grievance officer cannot substantiate the incident occurred any other way than reported. [Disciplinary report] upheld, disciplinary sanctions and procedures imposed are in max capacity." *Id.* The Chief Administrative Officer concurred with the grievance officer's findings and conclusion. See *id.* Buchanan appealed to the Administrative Review Board of the Office of Inmate Issues at the Illinois Department of Corrections ("ARB"). The ARB reviewed the disciplinary report, the Adjustment Committee's summary of Buchanan's disciplinary hearing, the grievance officer's report, and the chief administrative officer's approval. It concluded that, "[b]ased on a review of all available information and a compliance check of the procedural due process safeguards outlined in DR504, [that it was] reasonably satisfied the offender committed the offenses." *Id.* at 4. The

6

ARB recommended that the grievance be denied. *Id.*

Buchanan filed a second grievance on September 25, 2009. See [82-7]. In the "Nature of the Grievance" section of the form, Buchanan checked the "Staff Conduct" and "Disciplinary Report" boxes. See *id.* He did not check the "Dietary" or "Medical Treatment" boxes. See *id.* In this grievance, Buchanan stated:

> On 9-21-09 I was taken to the H-C-U here at Stateville and placed in a dry cell #127 so that the officer's in I.A. could go through my bowel movement's, so when I was placed in the cell I was striped of all my clothes and was given just a mattress and the mattress in the cell had a rip down the middle, so on 9-22-09 in the morning a I had a bowel movement so I.A. was notified and C/O Schwarz came to look through it and I said to him I see they got you on "Dookie Detail" and he got mad and told C/O Millsap to write me a ticket for tearing the mattress and Officer Millsap asked if I ripped the mattress and I said no as C/O Schwarz was standing there, then on 9-25-09 C/O Schwarz #5274 wrote a ticket on me and blatantly lied on the ticket and wrote that I told him that I riped the mattress and climbed inside of it which is a flat out lie.

*Id.* at 1-2. The grievance officer denied the grievance, and the Chief Administrative Officer concurred. *Id.* at 3. Buchanan sought further review of the grievance by the ARB, which also denied the grievance. *Id.* at 4.

Buchanan filed a third grievance on November 6, 2009. [82-8]. In the "Nature of the Grievance" section of the form, Buchanan checked the "Medical Treatment" and "Disciplinary Report" boxes. See *id.* at 1. He alleged that since the September 21, 2009 incident, his neck had been tight and very sore, and that his throat hurt such that he could barely swallow. See *id.* Buchanan alleged that he had been requesting to see a doctor since September 25, 2009, but had not yet seen one. See *id.* The grievance officer reviewed Buchanan's allegations and noted that, per Harrington, "the grievant was putting something in his mouth. 'I tried to stop the offender and I fell on the floor.'" *Id.* at 2. The grievance officer found that the grievance had been resolved because Buchanan was seen by the healthcare unit on November 23, 2009, and was

7

prescribed medication. See *id.* The Chief Administrative Officer concurred, and Buchanan appealed to the ARB. The ARB reviewed the record and opined that the grievance should be denied "as the offender's medical needs are being addressed by the Stateville Correctional Center Administration, in accordance with established policies and procedures." *Id.* at 3. The ARB also noted that "Buchanan received a disciplinary report regarding this incident on 9/21/09 wherein he swallowed an unidentified item during a strip search. There is no indication that Offender Buchanan lost consciousness and in fact stated to staff 'I swallowed it, it's gone.'" *Id.*

## II. Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); see also Fed. R. Civ. P. 56(c)(1)(B). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing

party]." *Anderson*, 477 U.S. at 252; see also *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010) ("We often call summary judgment the 'put up or shut up' moment in litigation, by which we mean that the non-moving party is required to marshal and present the court with the evidence she contends will prove her case. And by evidence, we mean evidence on which a reasonable jury could rely." (citations omitted)).

**III. Analysis**

**A. Denial of Food & Water**

Buchanan claims that Defendant Duncan violated his Eighth Amendment rights by denying Buchanan's requests for food and water while Buchanan was in the dry cell. Defendants have moved for summary judgment on this claim, arguing that Buchanan has failed to exhaust his administrative remedies.

The Prison Litigation Reform Act provides that no civil rights actions may be brought "by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). To exhaust administrative remedies, inmates must file timely grievances in accordance with the procedures and rules of the state prison's grievance process. See *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011). Grievances are intended to "allow[ ] a prison to address complaints about the program it administers before being subjected to suit, reduc[e] litigation to the extent complaints are satisfactorily resolved, and improv[e] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). Thus, "[w]hen the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All

9

the grievance need do is object intelligibly to some asserted shortcoming." *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). The "administrative rulebook" in Illinois is not silent, however. It provides that grievances must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or otherwise involved in the complaint." Ill. Admin. Code tit. 20, § 504.810; see also *Maddox*, 655 F.3d at 721.

Defendants contend that none of Buchanan's three grievances relating to the September 21, 2009 incident contains factual details concerning the alleged denial of food and beverages by Defendant Duncan or any other Stateville employee. Buchanan responds that "defendants have parsed [his] grievances in an overly-technical manner," and that his reference to a "dry" cell in the first September 25, 2009 grievance "'alert[ed] the prison to the nature of the wrong' for which [he] seeks redress." [99] at 9 (quoting *Riccardo*, 375 F.3d at 524)).

No reasonable jury could conclude that Buchanan's first September 25, 2009 grievance – or, indeed, any of the three he filed – alerted Stateville officials to his claim that he was denied food and water. Buchanan's lengthy narratives contained only passing references to the "dry cell," and no allegations about food, beverage, or the denial of either. Moreover, in the "Nature of the Grievance" section of the forms, Buchanan did not check the "Dietary" box. He did check the "Staff Conduct" box, which might on a very generous interpretation support an inference that Buchanan sought to grieve about Defendant Duncan's alleged denial of water, but none of the grievances mentions Duncan or any correctional officer in connection with meal or beverage service (or the alleged lack thereof). The lack of factual details about the alleged deprivation of food and beverage in Buchanan's grievances not only rendered them noncompliant with the requirements of Illinois's grievance procedures but also prevented Defendants from addressing

10

Buchanan's allegations through the grievance process. See *Dain v. Mitchell*, 2009 WL 4728183, at *1 (S.D. Ind. Dec. 2, 2009). Accordingly, the Court concludes that Buchanan failed to exhaust his administrative remedies. Defendants' motion for summary judgment on this claim is granted.

### B. Excessive Force

Buchanan also claims that Defendants Harrington and Schwarz employed excessive force in responding to his alleged misconduct on September 21, 2009. Defendants have moved for summary judgment on this claim. Their only argument is that Buchanan's claim of excessive force are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

"Under the rule of the *Heck* case, a civil rights suit cannot be maintained by a prisoner if a judgment in his favor would 'necessarily imply' that his conviction had been invalid, and for this purpose the ruling in a prison disciplinary proceeding is a conviction." *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2012) (quoting *Heck*, 512 U.S. at 487) (citation omitted). The Seventh Circuit has explained that "*Heck* forbids a prisoner in his civil rights case to challenge a finding in his criminal or prison-discipline case that was essential to the decision in that case; if he insists on doing that, the civil rights case must be dismissed." *Id.* (citing *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003)). A prisoner may, however, "remain 'agnostic' in his civil rights case about the findings in the criminal (or disciplinary) proceedings." *Id.* Thus, "[a] contention that a guard struck back after being hit is compatible with *Heck*." *Gilbert v. Cook*, 512 F.3d 899, 901 (7th Cir. 2008). And "a prisoner need not repudiate his allegation that he did nothing wrong in order to maintain that he was the victim of excessive force[;] * * * the plaintiff need not adopt the defendants' view of what occurred in order to contest the degree of force used." *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010).

The Seventh Circuit's reasoning in *Evans* is instructive. There, the plaintiff made three

contentions: "(1) that he did not resist being taken into custody; (2) that the police used excessive force to effect custody; and (3) that the police beat him severely even after reducing him to custody." *Evans*, 603 F.3d at 364. The Seventh Circuit concluded that his suit survived a *Heck* challenge because it did "not understand Evans to assert that he is advancing propositions (2) and (3) if and only if the district court accepts proposition (1)." *Id.*

The same conclusion is required here. Buchanan alleges that "Officers Harrington and Schwarz used excessive force in response to his actions, including choking him to the point of unconsciousness." [99] at 8. These contentions are analogous to propositions (2) and (3) in *Evans*. Buchanan also contends that he did not try to swallow anything, did not resist Defendants, and did not (indeed, could not) attempt to bite Buczkowski, in contravention of the findings of the disciplinary board. This contention is analogous to proposition (1) in *Evans*. But, as in that case, there is no indication that Buchanan seeks to pursue his claim of excessive force "if and only if the district court accepts proposition (1)." *Evans*, 603 F.3d at 364. The Court may thus "implement[ ] *Heck* * * * through instructions to the jury at the start of trial, as necessary during the evidence, and at the close of trial." *Gilbert*, 512 F.3d at 902. In *Gilbert*, that meant telling the jurors "that Gilbert struck the first blow during the fracas at the chuckhole, that any statements to the contrary by Gilbert (as his own lawyer) or a witness must be ignored, and that what the jurors needed to determine was whether the guards used more force than was reasonably necessary to protect themselves from an unruly prisoner." *Id.* The parties will be given an opportunity to submit proposed jury instructions (and objections thereto) prior to trial.

Defendants maintain that *Moore v. Mahone*, 652 F.3d 722 (7th Cir. 2012), dictates a contrary result. The Court is not persuaded that it does. In *Moore*, the Seventh Circuit concluded that the prisoner's allegations were "in tension with the disciplinary board's findings." *Moore*,

12

652 F.3d at 724. Nonetheless, the Seventh Circuit held that "[t]he judge could have retained the case * * * on the authority of *Evans*, and just have forbidden the plaintiff to embroider his claim with the rejection of the disciplinary board's findings," or could have dismissed the claim without prejudice and permitted the plaintiff to file a second amended complaint that omitted all allegations inconsistent with the findings of the disciplinary board. *Id.* at 725. The Seventh Circuit held that the claim could not be dismissed with prejudice, see *id.*, which is what Defendants seek here.

The Court denies Defendants' motion for summary judgment on Buchanan's excessive force claim. Because there are myriad issues of disputed fact, the claim cannot be disposed of on summary judgment.

## IV. Conclusion

For the reasons stated above, Defendants' motion for summary judgment [81] is granted in part and denied in part. Summary judgment is granted as to Plaintiff's claim of deliberate indifference against Defendant Duncan; that claim is dismissed, and Defendant Duncan is dismissed from the case. Summary judgment is denied as to Plaintiff's claim of excessive force against Defendants Harrington and Schwarz. This matter is set for status on April 16, 2013 at 9:00 a.m.

Dated: March 25, 2013  _____
Robert M. Dow, Jr.
United States District Judge

13